UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X
INTEGRATED MARKETING AND PROMOTIONAL        :
SOLUTIONS, INC.                             :
                                            :
                    Plaintiff,              :
                                            :
v.                                          :        **OPINION & ORDER**
                                            :        06 Civ. 5640 (JFK)
                                            :
JEC NUTRITION, LLC and KELLY LOCKWOOD,      :
                                            :
                    Defendants.             :
-----------------------------------------X

**APPEARANCES**

    For Plaintiff Integrated Marketing and Promotional
Solutions:

            McCarter & English, LLP
            Four Gateway Center
            100 Mulberry Street
            Newark, NJ 07102-4056
                Of Counsel: Darcelle D. Gleason, Esq.

    For Defendant Kelly Lockwood:

            Law Offices of Myron D. Milch, P.C.
            Continental Plaza III
            433 Hackensack Avenue, 2nd Floor
            Hackensack, NJ 07601
                Of Counsel: Myron D. Milch, Esq.

            Steinbach & Associates, P.C.
            One University Plaza, Suite 412
            Hackensack, NJ 07601
                Of Counsel: Harold I. Steinbach, Esq.


**JOHN F. KEENAN, United States District Judge.**

**JOHN F. KEENAN, United States District Judge:**

Plaintiff Integrated Marketing and Promotional Solutions, Inc. ("IMPS") has brought this action for breach of contract and related claims against corporate defendant JEC Nutrition, LLC ("JEC").  IMPS also has asserted a claim against Kelly Lockwood ("Lockwood"), the CEO of JEC, in his individual capacity, alleging that Lockwood personally guaranteed a contract under which JEC now allegedly owes IMPS over $1.8 million in unpaid invoices.  Lockwood moves  pursuant to Federal Rule 12(c) to dismiss the claim asserted against him, claiming that IMPS' pleadings do not sufficiently allege that Lockwood is personally bound under the contract.  For the reasons that follow, Lockwood's motion is denied.

<u>**Background**</u>

IMPS is a New York company that develops marketing plans, creates advertising materials, and buys advertising space for its clients.  JEC Nutrition, LLC ("JEC") is a New Jersey company that sells nutritional supplements.  On November 17, 2005, IMPS and JEC entered into an Agency-of-Record Agreement ("Agreement").  The Agreement provided that IMPS would plan JEC's marketing and advertising strategy, create advertising materials, and buy advertising space with media providers on JEC's behalf.  In return, JEC agreed to pay IMPS for expenses, fees, and commissions on the media purchases.  The Agreement provided that

2

JEC would pay IMPS' invoices within 30 days of receipt.  Lockwood signed the Agreement as CEO of JEC.

IMPS commenced this action by filing a Complaint on July 26, 2006, to which the Agreement was attached as an exhibit. IMPS alleged that JEC had failed to pay over $1.8 million in outstanding invoices for fees, commissions, and expenses relating to services that IMPS had rendered on JEC's behalf under the Agreement.  IMPS asserted claims against JEC for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and book account.  IMPS also alleged that, "[p]ursuant to the Agency Agreement, Kelly Lockwood, the principal of JEC, personally guaranteed the payment of all sums due under the Agency agreement." (Compl., at 3.)  IMPS asserted a claim on the guaranty against Lockwood.

The Agreement is seven pages long.  The first three pages comprise 14 paragraphs that set forth the parties' various warranties and covenants.  The fourth page contains the parties' signatures, which are set forth as follows:

> The parties have hereto caused this agreement to be duly executed as of the date first written above.
>
> Integrated Marketing &
> Promotional Solutions, Inc.
>
> By: /s/Jay Keay
> Name: Jay Keay
> Title President & CEO
>
> JEC Nutrition LLC

```
              By: /s/Kelly Lockwood
_____ Name: Kelly Lockwood
              Title CEO
(Compl., Ex. A, at 4.)
```

In addition to the signature page, Lockwood's name is mentioned in the body of the Agreement, on page two, paragraph eight, which states in part that all communications made from IMPS to JEC are to be sent to JEC's corporate address, "Attention:  Kelly Lockwood." (Compl., Ex. A, at 2.)

Three unsigned pages, which respectively are entitled "Annex 1: Campaign Description", "Annex 2: Compensation", and "(A)Annex 3: Expenses", follow the signature page.  The page entitled "Annex 2: Compensation", which is page six of the Agreement, contains the following paragraph:

> The undersigned for the client personally guarantees the payment of client's debts.  In the event that agency [IMPS] is unable to secure payment from the client, the undersigned personally guarantees all liabilities, including interest, collection costs and attorney's fees.

(Compl., Ex. A, at 6.).

IMPS has alleged that this personal guaranty clause renders Lockwood liable to IMPS for the unpaid sums due under the Agreement.

Lockwood moves pursuant to Rule 12(c) to dismiss IMPS' claim against him.  Lockwood contends that, under  New York's Statute of Frauds, N.Y. Gen. Obl. L. § 5-701(a)(2), a party seeking to impose personal liability on a corporate agent who signs an agreement in a representative capacity must show that the agent had

-4-

the clear and explicit intent to be bound under the Agreement. Lockwood argues that IMPS' pleadings do not sufficiently allege Lockwood's intent to be bound.  The unsigned personal guarantee clause, Lockwood asserts, is insufficient standing alone to impose personal liability on Lockwood.

IMPS argues, <u>inter alia</u>, that it has met its burden of pleading Lockwood's personal liability under the Agreement.  IMPS also has submitted with its memorandum of law in opposition to Lockwood's motion to dismiss (1) a copy of an earlier agency-of-record agreement, entered into by IMPS and JEC in January 2005; (2) an affidavit from John Keay, IMPS' President; and (3) an affidavit from Michael Caprio, IMPS' executive vice president.  IMPS contends that these documents establish that questions of fact exist as to whether Lockwood intended to be bound personally by the personal guarantee provision.

The Court heard oral argument on December 6, 2006.

## **Analysis**

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief may be granted. <u>See</u> <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123, 126 (2d Cir. 2001).  In both situations, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor

of the plaintiff. <u>See</u> <u>Patel</u>, 259 F.3d at 126.  The Court may dismiss the complaint only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir. 1994) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). "Judgment on the pleadings is rarely granted and is not proper unless the movant clearly establishes that no material issue of fact remains to be resolved." <u>James Miller Marine Serves. Inc. v. V.I.P. Yacht Cruises, Inc.</u>, No. 01 Civ. 2938, 2002 WL 1467705, at*2 (E.D.N.Y. Apr. 30, 2002) (citing 5A Wright, Miller & Kane, Federal Practice & Procedure, Civil 2d § 1368 (2d ed.1990)).  The issue to be decided on this motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996).

Lockwood's motion to dismiss requires the Court to determine whether IMPS' pleadings, consisting of the Complaint and the attached Agreement, are legally sufficient to support a claim of action on the guarantee against Lockwood in his individual capacity.  Under New York law,[1] an agent who signs an agreement on behalf of a disclosed principal will not be

---

[1] The Agreement provides that all claims and disputes arising from the Agreement "shall be governed by and construed in accordance with the laws of the state of New York." (Compl., at 3, ¶ 12.)

individually bound to the terms of the agreement "'unless there
is clear and explicit evidence of the agent's intention to
substitute or superadd his personal liability for, or to, that of
his principal.'" Lerner v. Amalgamated Clothing and Textile
Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (quoting Mencher v.
Weiss, 306 N.Y. 1, 4 (1953)).  The rule that an agent is not
personally liable for the obligations of his principal absent
clear and explicit evidence of the agent's intent to be bound "is
based upon New York's Statute of Frauds, which requires all
'promises to answer for the debt, default or miscarriage of
another person . . . [to] be in writing and subscribed by the
party to be charged therewith . . . .'" Abdi Hosh Ashkir v.
Wilson, No. 98 Civ. 2632, 1999 U.S. Dist. LEXIS 14275, at *31
(S.D.N.Y. Sept. 13, 1999) (quoting N.Y. Gen. Obl. L. § 5-
701(a)(2)).

        To determine whether an agent's signature on an
agreement complies with the Statute of Frauds, courts of the
Second Circuit focus on the intent of the agent to be bound. See
Cement and Concrete Workers District Council Welfare Fund v.
Lollo, 35 F.3d 29 (2d Cir. 1994).  In Lollo, the Second Circuit
set forth five factors that courts should consider in determining
whether an agent has sufficient intent to be bound personally
under an agreement:  "[1] the length of the contract, [2] the
location of the liability provision(s) in relation to the

signature line, [3] the presence of the signatory's name in the agreement itself, [4] the nature of the negotiations leading to the contract, and [5] the signatory's role in the corporation." Id. at 35. The Second Circuit also has suggested examining the structure and content of the signature lines to determine whether the agent intended to sign the contract in his official capacity only. Lerner, 938 F.2d at 5. Also relevant to the court's determination is the holding by the New York Court of Appeals that "'where individual responsibility is demanded the nearly universal practice is that the officer signs twice -- once as an officer and again as an individual.'" Consac Indus. v. LDZ Comercio Importacao E Exportacao LTDA, No. 01 Civ. 3857, 2002 U.S. Dist. LEXIS 19654, at *8 (E.D.N.Y. Aug. 29, 2002) (quoting Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67 (1961)). Although two signatures are not required in order to impose personal liability on the agent, the existence of only one signature weighs against imposition of personal liability. Consac, 2002 U.S. Dist. LEXIS 19654, at *8. The Lollo factors apply whether the clause that purportedly binds the corporate actor is a personal liability clause or a personal guarantee clause. See Jacobson v. Televida, Inc., No. 04 Civ. 163, 2005 WL 3609101, at *4 (E.D.N.Y. Aug. 10, 2005) (noting that "the New York cases that serve as the foundation for the Lerner rule, and in turn Lollo, interpret personal guarantee provisions" as well as personal liability

-8-

provisions).

To succeed on a motion to dismiss under Rule 12(c), Lockwood must show that, on the basis of IMPS' Complaint and the attached Agreement, IMPS will not be able to prove any facts to establish that Lockwood intended to be bound by the personal guarantee clause of the Agreement.  Courts of this Circuit have considered the factors set forth in <u>Lollo</u> and additional factors to determine, on a motion to dismiss, whether the pleadings contain sufficient allegations of a corporate agent's intent to be personally bound to withstand a motion to dismiss.

In <u>Consac</u>, 2002 U.S. Dist. LEXIS 19654, for example, the Eastern District faced a similar set of facts and an identical procedural posture as this Court now confronts.  The defendant in <u>Consac</u> was the director of a distribution company who had negotiated and signed in his representative capacity a distribution agreement with the plaintiff manufacturing company. <u>Id.</u> at *2-4.  The distribution company allegedly defaulted on its payments, and plaintiff sued the defendant director in his individual capacity, claiming that he had assumed personal liability under the contract.  <u>Id.</u> at *5.  The court reviewed several of the <u>Lollo</u> factors and found that a number of them weighed against imposing personal liability.  Namely, the court cited the absence of the defendant's name in the body of the contract, the absence of a personal liability or guarantee clause

-**9**-

in the contract, and the fact that the defendant had clearly signed the contract in his capacity as director, "by" the corporate entity, as militating against imposition of personal liability.  Id. at *13-14.  However, the court also noted that the plaintiff had alleged that the defendant had personally negotiated the contract, served as the plaintiff's contact at the distributor, and assured the plaintiff that the distributor would pay its debts.  The court found that these allegations militated in favor of imposition of personal liability.  Id. at *12-13. The court observed that there were "competing factual allegations with regard to [defendant's] intent," and that "the present case may contain clear and explicit evidence of the [defendant's] intent to be individually liable under the contract." Id. Accordingly, the court held that dismissal pursuant to Rule 12(c) was not appropriate. Id. at *14.

Similarly, in Jacobson v. Televida, Inc., 2005 WL 3609101, the Eastern District refused to dismiss a claim against a defendant at the pleading stage.  In Jacobsen, one of the defendant corporate officers had signed a letter of agreement that stated that the officer agreed to be bound by all the terms of a collective bargaining agreement into which the parties had entered. Id. at *1.  The defendant signed in his representative capacity, but the plaintiff asserted claims against the defendant in his individual capacity,  based on a personal guarantee clause

contained in the 79-page collective bargaining agreement. Id.
Analyzing the Lollo factors, the court found that three of the
five factors weighed against imposition of personal liability.
Id. at *5.  However, the court also found that a statement
contained in the letter of agreement, acknowledging that the
signatory had fully read the collective bargaining agreement,
weighed in favor of imposing liability. Id.  Further, the court
observed that the parties had not yet submitted evidence
regarding two of the Lollo factors–namely, the role of the
defendant in the corporation and the process of negotiation
leading up to the agreement's execution.  Id. Finding that the
defendant had failed to show that "there is no set of facts which
will prove that these factors do not weigh heavily in Plaintiff's
favor," the court declined to dismiss the claims against the
defendant in his individual capacity. Id.

        New York state courts also have refused to dismiss
claims at the pleading or summary judgment stage against
defendants in their individual capacities where a plaintiff may
yet produce facts to demonstrate that the individual defendant
had the requisite intent to be bound by a personal guarantee
provision.  See, e.g., Yellow Book of NY, 309 A.D.2d at 860; Star
Video Entertainment, LP v. J & I Video Distrib., Inc., 268 A.D.2d
423 (App. Div. 2d Dep't 2000); Paribas Properties, 146 A.D.2d at
525; 30 Broad, LLC v. Lawrence, 2006 NY Slip Op 51316U, 2-3 (N.Y.

Sup. Ct. 2006).

Here, several of the <u>Lollo</u> factors weigh in favor of a finding that Lockwood intended to be bound, several factors militate against that conclusion, and one factor is neutral. The factors are analyzed in turn.

The first factor (length of the contract), weighs in favor of IMPS. The contract is only seven pages long and, as IMPS points out in its brief, several of those pages are only approximately half-filled with text. This was not a case where a single sentence provision buried in a long, dense contract filled with fine-print constituted a "'trap for an unwary agent.'" <u>Lehman Bros. v. Tutelar CIA Financiera, S.A.</u>, No. 95 Civ. 3772, 1997 U.S. Dist. LEXIS 10353 (S.D.N.Y. July 16, 1997) (quoting <u>Paribas Properties v. Benson</u>, 146 A.D.2d 522 (App. Div. 2d Dep't 1989)); <u>see also</u> <u>Florence Corp. v. Penguin Constr. Corp.</u>, 227 A.D.2d 442, 443 (App. Div. 2d Dep't 1996) ("[T]his is not a situation wherein the plaintiff attempted to trap an unwary corporate officer into making an unintended assumption of personal liability by inserting an obscure clause in the midst of a lengthy and complex contract"). In this case, the relatively short length of the Agreement does not present the "great danger [of] allowing a single sentence in a long contract to bind individually a person who sign[ed] only as a corporate officer." <u>Salzmann</u>, 10 NY 2d at 67.

12

The second factor (location of the guarantee clause in relation to the signature) weighs against IMPS.  The page that contains the guarantee clause is separate from and follows the page that contains Lockwood's signature.  However, contrary to Lockwood's argument, the fact that the personal guarantee clause is located on a page separate from the signature page is not enough to warrant dismissal of the claims against Lockwood, as it is only one of several factors that courts must consider.  New York courts have held that triable issues of fact may remain regarding a corporate representative's personal liability under a personal guarantee clause, even where the signature is on a page sepearte from the guarantee clause.  See, e.g.,Yellow Book of NY, LP v. DePante, 309 A.D.2d 859, 860 (App. Div. 2d Dep't 2003).

The third factor (presence of the signatory's name in the agreement) weighs in favor of IMPS, but only slightly. Lockwood's name is listed on page two, paragraph eight, of the Agreement, in which Lockwood is named as the person at JEC to whom IMPS should direct all communications.  However, as one court has noted, the important question is not simply whether the signatory's name appears anywhere in the body of the contract, but whether the name appears in the personal guarantee clause itself. See Turtle & Hughes, Inc. v. Browne, No. 95 Civ. 9573,1996 WL 384895, at *3 (S.D.N.Y. July 9, 1996).

The fourth factor (nature of negotiations) is thus far

13

neutral.  The pleadings contain no allegations regarding the
negotiation process.

The fifth factor (signatory's role in the corporation)
weighs heavily in favor of IMPS.  "[O]ne factor on which New York
courts have relied in finding intent to be personally bound is
that the signatory was the president and principal shareholder in
the corporation."  Lehman Bros., Inc. v. Tutelar CIA Financiera,
S.A., 1997 WL 403463, at *3 (S.D.N.Y. 1997).  The Complaint
alleges that Kelly Lockwood is "the principal of JEC." (Compl. at
3.) .  The Agreement plainly shows Lockwood to be JEC's CEO.
(Compl., Ex. A, at 4.) Lockwood's position of prominence and
control in his company weighs in favor of finding that he
intended to be bound by the personal guarantee clause.

The additional factors that courts consider, regarding
the structure of the signature line and the number of the
defendant's signatures in the contract, weigh against IMPS.
Specifically, the fact that Lockwood's signature is preceded by
the word "By" weighs against imposition of personal liability.
Courts have construed a signature by a corporate representative
following the word "by" to be indicative of an act of agency,
militating against a finding of personal liability.  See Lerner,
938 F.2d at 6. Further, the fact that Lockwood signed the
Agreement only once goes against the "nearly universal practice
of having  the officer sign[] twice -- once as an officer and

14

again as an individual." <u>Salzman,</u> 10 N.Y.2d at 67.

Thus, of the five <u>Lollo</u> factors, three are in IMPS'
favor (one heavily so), one is in Lockwood's favor, and one
remains neutral pending submission of evidence by the parties.
The additional factors weigh against IMPS.  The scales thus tip
slightly in favor of IMPS.  However, the issue at this stage is
not whether the factors definitively militate in favor of
imposition of personal liability.  The issue is whether
evaluation of the factors indicates that it is possible that the
plaintiff will be able to prove intent.  Hence, a finding that
the factors are mixed counsels against dismissal of IMPS' claim
against Lockwood.

In his memorandum of law, Lockwood insists that the 45-
year old New Court of Appeals case, <u>Salzman Sign Co. v. Beck</u>,
<u>supra</u>, is dispositive of this mater.  In <u>Salzmann</u>, the court
upheld the lower court's grant of summary judgment dismissing
claims asserted against a corporate president in his individual
capacity.  The president had signed a contract in his
representative capacity, as a corporate officer, but the contract
contained a personal guarantee provision. <u>Id.</u> at 65.  Plaintiff
asserted a breach-of-contract claim against the president on the
basis of the personal guarantee clause. <u>Id.</u>  The Court of Appeals
held that the unsigned clause did not comply with New York's
Statute of Frauds.  The court reasoned as follows:

> In modern times most commercial business is done
> between corporations, everyone in business knows
> that an individual stockholder or officer is not
> liable for his corporation's engagements unless he
> signs individually, and where individual
> responsibility is demanded the nearly universal
> practice is that the officer signs twice -- once as
> an officer and again as an individual. There is
> great danger in allowing a single sentence in a
> long contract to bind individually a person who
> signs only as a corporate officer. In many
> situations the signing officer holds little or no
> stock and if the language of the agreement makes
> him individually liable his estate may be stuck for
> a very large obligation which he never dreamed of
> assuming. We think the better rule is the one used
> here -- that is, that the statement in the contract
> purporting to bind the signing officer individually
> is not sufficient for Statute of Frauds purposes
> without some direct and explicit evidence of actual
> intent.

Salzman, 10 N.Y.2d at 67.

Lockwood's reliance on Salzmann is misplaced. In that case, the court adjudicated a motion on summary judgment. The plaintiff had had the opportunity to produce "direct and explicit evidence" of the corporate president's intent to be bound but had failed to produce any such evidence. Here, by contrast, the case has not progressed past the pleading stage. The parties have not yet had a full opportunity to produce evidence relating to Lockwood's intent to be bound personally under the Agreement. As discussed above, under the test employed by the Second Circuit, the pleadings sufficiently allege that Lockwood intended to be bound. Specifically, the presence of a personal guaranty provision, the short length of the Agreement, Lockwood's

16

prominent role in JEC as the company's CEO, and the mention of Lockwood's name in the body of the Agreement indicate that there is a possibility that IMPS will be able to prove that Lockwood intended to be bound by the personal guarantee provision. Further, it is possible that IMPS will produce evidence regarding the nature of negotiations to show that Lockwood's intended to be bound.  Thus, IMPS' claim against Lockwood should be allowed to proceed, and Lockwood's motion to dismiss must be denied.

It should be noted that the Court has not considered the documents that IMPS has submitted with its opposition papers. Under Federal Rule 12(c), the court may consider, "in its discretion and upon notice to all parties," materials outside the pleadings. Fed. R. Civ. P. 12(c).  If it does so, however, the motion must be treated as one for summary judgment under Federal Rule 56. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).  Here, however, there is no reason to consider the extrinsic documents and convert the motion to dismiss, because Lockwood's motion to dismiss is denied exclusively on the basis of the pleadings.

## Conclusion

Lockwood has not shown that IMPS will be unable to prove that Lockwood intended to be bound by the personal guaranty provision of the Agreement.  Accordingly, Lockwood's motion to dismiss is DENIED.  Discovery is to proceed and counsel are

directed to appear for a status conference on March 15, 2007, at 10:00 AM.


SO ORDERED.
Dated:    New York, New York
          December, **1 2**2006

                                        *JOHN F. Keenan* (signature)
                                   _____
                                        **JOHN F. KEENAN**
                                   **United States District Judge**

18