```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
INTEGRATED MARKETING AND PROMOTIONAL     :
SOLUTIONS,                               :
                                         :
                Plaintiff,               :
                                         :
                                         :              MEMORANDUM
                -v-                      :           OPINION & ORDER
                                         :            06 Civ. 5640 (JFK)
                                         :
JEC NUTRITION LLC and KELLY LOCKWOOD,    :
                                         :
                Defendants.              :
-----------------------------------------X
```

**JOHN F. KEENAN, United States District Judge**:

Before the Court is Plaintiff's motion to enforce a settlement agreement reached by the parties' respective counsel on February 20, 2008. For the reasons discussed below, Plaintiff's motion is granted.

## BACKGROUND

On July 26, 2006, Plaintiff Integrated Marketing and Promotional Solutions, Inc. ("IMPS" or "Plaintiff") commenced this action for breach of contract and related claims, invoking the Court's diversity jurisdiction, against Defendants JEC Nutrition, LLC ("JEC") and JEC's CEO and sole principal, Kelly Lockwood ("Lockwood", and collectively "Defendants"). The underlying facts of the lawsuit are set forth in a prior Memorandum Opinion and Order of the Court, see <u>Integrated Marketing and Promotional Solutions, Inc. v. JEC Nutrition, LLC</u>, No. 06 Civ. 5640, 2006 WL 3627753 (S.D.N.Y. Dec. 12, 2006), and familiarity with those facts

1

is assumed. In brief, IMPS, a company that provides advertising and media consulting services, entered into a contract with JEC, a company that distributes nutritional supplements, pursuant to which IMPS agreed to plan JEC's marketing and advertising strategy, create advertising materials, and buy advertising space with media providers on JEC's behalf. JEC allegedly failed to pay IMPS approximately $1.8 million in outstanding invoices. IMPS brought suit against JEC and Lockwood, individually, as the personal guarantor of the agreement.[1] Discovery in the case was ongoing when settlement discussions began.

The sole issue raised by the present motion is whether Defendants' counsel, Myron Milch, Esq. ("Milch"), had authority to bind Lockwood to the settlement agreement. The parties' submissions on this motion establish the following relevant facts about the settlement discussions.[2] Except where noted, the facts are undisputed.

In the fall of 2007, Lockwood initiated settlement discussions with a former officer of IMPS, but no agreement was

---

[1] In November 2006, Lockwood moved to dismiss the complaint against him on the ground that he had not personally guaranteed the contract between JEC and IMPS. By Order dated December 12, 2006, the Court denied the Motion. See Integrated Marketing and Promotional Solutions, Inc., 2006 WL 3627753.

[2] In addition to their memoranda of law, the parties have submitted affidavits from counsel and from Lockwood, as well as exhibits consisting of various e-mails that were exchanged between opposing counsel, and between Milch and Lockwood, relating to settlement discussions.

reached. In January 2008, a settlement conference was held before the Hon. James C. Francis, IV, U.S.M.J., which was attended by Milch and Plaintiff's initial counsel, Kevin J. Licciardi, Esq., of the law firm McCarter & English. Settlement discussions continued in the form of telephone calls between Milch and Plaintiff's current counsel, Clement Farley, Esq. ("Farley"), also of McCarter & English. During these discussions, Farley told Milch that any settlement would have to (1) include Lockwood individually as a co-obligor or guarantor, or (2) include full, or at least a large portion of, payment at one time. Farley again advised Milch of this requirement on February 14, 2008, and Milch conveyed Farley's insistence on such an arrangement to Lockwood via e-mail on February 18, 2008.

On February 14, 2008, Milch and Farley had two telephone discussions during which the attorneys discussed the possibility of settlement. During these discussions, Milch told Farley that he had "full authority to settle on behalf of Defendants" and that he "had 'just spoken to his client,' or words virtually identical to those." Affidavit of Clement J. Farley in Support of Motion to Enforce Settlement ¶¶ 8, 10. However, Milch also said he would have to check with Lockwood before responding to Farley.

After his first discussion with Farley on February 14, 2008, Milch called Lockwood "to find out what he wanted to do about settling the case." Certification of Myron D. Milch, Esq., in

3

Opposition to Plaintiff's Notice of Motion to Enforce a Settlement ("Milch Cert.") ¶ 4. Both Milch and Lockwood concede that, during this conversation, Lockwood authorized Milch to conclude a settlement agreement for any amount up to $180,000. Milch and Lockwood did not discuss any limitation on Lockwood's personal liability in the event that Milch concluded a deal. After speaking with Lockwood, Milch spoke again with Farley. According to Milch, Milch offered to settle the case for $100,000. According to Farley, Milch made an offer of $160,000. In any event, no deal was struck on February 14.

On February 18, 2008, Milch sent Lockwood an e-mail in which Milch recounted for his client the substance of the February 14 settlement discussion with Farley. Milch then decamped for a five-day vacation. On February 19, 2008, Lockwood sent Milch an e-mail in which Lockwood stated that he did not wish to accept any settlement offer that imposed personal liability on him in excess of $75,000.

On February 20, 2008, Milch and Farley held another telephone conversation during which Milch offered $150,000 to settle the case. At the time Milch made this offer, he had not read the e-mail sent by Lockwood on February 19. Farley immediately accepted the offer on behalf of IMPS. The payment terms, discussed over the telephone and subsequently confirmed by an e-mail from Farley to Milch, were as follows: $36,000 was to be

4

paid in seven to ten days, and the balance was to be paid in monthly installments of $9,500 over the next twelve months. Under the agreement, Lockwood was personally liable for the full settlement amount of $150,000. During this discussion, Milch told Farley again that he had full settlement authority. After Farley accepted the $150,000 offer on behalf of Plaintiff, Milch "told Mr. Farley that [they] had settled the case." Milch Cert. ¶ 10.

Several days after the February 20, 2008 conversation, Milch told Farley that, at the time he made the settlement agreement, he was unaware that Lockwood had limited his authority. Milch stated that he had not seen Lockwood's February 19 e-mail and thus did not know that he was authorized only to agree on settlement terms that limited Lockwood's personal liability to $75,000. Accordingly, Lockwood claimed that the settlement was invalid. IMPS' present motion to enforce the terms of the February 20, 2008 settlement followed.

## DISCUSSION

It is undisputed that, on February 20, 2008, Milch and Farley reached an agreement to settle the present case on behalf of their respective clients. The sole issue before the Court is whether Milch had authority to conclude the deal.

Under New Jersey law,[3] settlement agreements made by

---

[3] Both parties cite to New Jersey law in their briefs and thus agree by implication that New Jersey law governs this matter. See Tehran-Berkeley Civil and Envtl. Eng'rs v. Tippetts-

5

attorneys when acting within the scope of their authority are enforceable against their clients. Jennings v. Reed, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005). Further, an attorney is presumed to possess authority to act on behalf of the client. Id. A party who asserts the lack of authority must sustain "a heavy burden to establish that [the] attorney acted without any kind of authority . . . ." Id. New Jersey law recognizes two types of attorney-possessed authority to settle a lawsuit that bind a client: actual (either express or implied) and apparent. Newark Branch, NAACP v. Twp. of W. Orange, N.J., 786 F. Supp. 408, 423 (D. N.J. 1992); Seacoast Realty Co. v. W. Long Branch Borough (Monmouth County), 14 N.J. Tax 197, 202-03 (N.J. Tax Ct. 1994); see also Jennings, 885 A.2d at 490.

IMPS claims that Milch had both actual and apparent authority to enter into the settlement agreement. Defendants argue that, because Milch did not actually have Lockwood's authority to enter into a settlement that imposed personal liability on Lockwood in excess of $75,000, Lockwood is not bound by the agreement.

Regardless of whether Milch had actual authority to bind Lockwood to the terms of the February 20, 2008 agreement, it is clear that Milch had apparent authority. Apparent authority exists "where the client by words or conduct communicated to the adverse

---

Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989); see also Levy v. Lucent Techs., Inc., No. 01 Civ. 2936, 2003 WL 118500, at *8 (S.D.N.Y. Jan. 14, 2003).

6

attorney, engenders a reasonable belief that the attorney possesses authority to conclude a settlement." Amatuzzo v. Kozmiuk, 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997). Reliance by the third party (namely, the adverse attorney) is essential to a finding of apparent authority. See, e.g., Sears Mortg. Corp. v. Rose, 634 A.2d 74, 80 (N.J. 1993). That reliance must be reasonable under the circumstances. See Shadel v. Shell Oil Co., 478 A.2d 1262, 1265 (N.J. Super. Ct. 1984). A principal's mere retention of an attorney is insufficient to cloak the attorney with apparent authority to conclude a settlement agreement. See Seacoast Realty Co. v. W. Long Branch Borough, 14 N.J. Tax 197, 203 (N.J. Tax Ct. 1994). In addition, the representations of the attorney, as the principal's agent, are not sufficient, standing alone, to confer apparent authority on the attorney. See Farmers & Merchants Nat'l Bank v. San Clemente Fin. Group Sec., 174 F.R.D. 572, 579 (D.N.J. 1997) (citing Wilzig v. Sisselman, 209 N.J. Super. 25, 35, 506 A.2d 1238 (App. Div. 1986)). However,

> [i]n New Jersey it has been held that sending an attorney to a settlement conference presumptively establishes that the attorney has authority to settle, and apparent authority may even be found where the principal denies having granted authority to settle, but nevertheless places the attorney in a position where "a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question."

Seacoast Realty Co., 14 N.J. Tax at 204-05 (N.J. Tax Ct. 1994) (quoting United States Plywood Corp. v. Neidlinger, 194 A.2d 730,

7

734 (N.J. 1963)).

Here, Farley was justified in presuming that Milch had authority to bind Lockwood to the settlement agreement that was reached on February 20, 2008. Milch had "represented [Lockwood] throughout the litigation, had engaged in prior settlement negotiations with [Farley]," and the offer extended by Milch was made without qualification and was "unconditionally accepted" by Farley. Seacoast Realty Co., 14 N.J. Tax at 205. Under these circumstances, Farley "had no reason to believe that [Milch] lacked authority to settle." Id. Moreover, Lockwood admits that he sent Milch to conduct settlement negotiations with Farley and expressly authorized Milch to enter into an agreement for any amount up to $180,000. Milch confirms that he was given this authority. These admissions by both principal and agent conclusively establish that Milch was cloaked in apparent authority. See Barticheck v. Fidelity Union Bank/First Nat'l State, 680 F. Supp. 144, 149 (D.N.J. 1988) (where plaintiffs admitted they permitted their agent to negotiate agreement, "the undisputed facts clearly indicate that Plaintiffs voluntarily placed [the agent] in the position as their agent such that the [defendant] may have reasonably relied upon this representation"); Jennings, 885 A.2d at 491 (finding authority where the principal "by her own admission, expressly authorized her [agent] to appear in court and negotiate the terms of a settlement," "her [agent] confirms this grant of settlement

8

authority," and "[the principal] by her own conduct, placed her [agent] in a position such that opposing counsel and the court were justified in presuming [the agent] had the requisite authority"). It is therefore undisputed that, on February 20, 2008, Lockwood had placed Milch in a position where Farley was fully justified in presuming that Milch had Lockwood's authority to settle the case.

Lockwood's sole argument – that Milch was mistaken in his belief that he was authorized to bind Lockwood to an amount in excess of $75,000 – is unavailing. Even if Milch did not have Lockwood's actual authority at the time he entered into the settlement agreement, the fact that Milch was imbued with apparent authority is sufficient to bind Lockwood. See, e.g., Newark Branch, NAACP, 786 F. Supp. at 423. Lockwood's transmission of the February 19 e-mail, and Milch's unfortunate failure to read it, did not dissolve or limit Milch's apparent authority. Apparent authority cannot be "qualified by the secret instructions of the principal." Wilzig v. Sisselman, 506 A.2d 1238, 1244 (N.J. Super. Ct. App. Div. 1986) (internal quotation marks and citation omitted).

Further, Milch's failure to read Lockwood's qualifying e-mail should not, as an equitable matter, work to the detriment of IMPS, whose attorney was justified in his belief that Milch had requisite authority to settle this case. In light of New Jersey's "strong public policy in favor of settlement," Jennings, 885 A.2d

9

at 491 (internal quotation marks, citation, and alteration omitted), and the correspondingly heavy presumption of validity that attaches to settlement agreements, Lockwood's late-in-the-day, unheeded instruction is of little moment.

In sum, Milch had apparent authority to enter into the February 20, 2008 settlement agreement. Accordingly, the settlement agreement is binding on the parties.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Enforce Settlement is GRANTED. The parties are directed to submit to the Court within twenty (20) days of the entry of this Order a stipulation setting forth the terms of the settlement that was reached on February 20, 2008.

SO ORDERED.

Dated: New York, New York
July 28, 2008

_____
JOHN F. KEENAN
United States District Judge